ROBBIE PICKETT EVANS and )
GEORGE R. BOOTH )
    *Plaintiffs*, )
)
v. )   Case No. 1:12-CV-202
)   *Mattice/Carter*
PROFESSIONAL TRANSPORTATION, INC. )
    *Defendant*. )

REPORT and RECOMMENDATION

I. Introduction

Professional Transportation, Inc. ("Professional Transportation") moves to file an amended answer, for leave to file a dispositive motion, and to stay the case pending a ruling on the dispositive motion. [Doc. 31]. The undersigned will address only the motion to amend the answer in this report and recommendation.[1]

Professional Transportation moves to amend its answer to assert the plaintiffs, Robbie Booth and George Evans, waived their retaliatory discharge claims brought in this Court under the FLSA when they entered into a settlement agreement of their Fair Labor Standards Act (FLSA) wage and hour class action brought against Professional Transportation in the United States District Court of the Southern District of Indiana (the Indiana Action). The settlement

---

[1] Because the undersigned finds that the defendant's proposed amendment to add a new defense should be denied, I am submitting this opinion in the form of a report and recommendation. I do so because, absent consent of the parties, a magistrate judge is not authorized to make final decisions dispositive of a claim or defense of a party. *See* Fed. R. Civ. P. 72, 28 U.S.C. § 636(b); *HCC, Inc. v. RH & M Machine Co.*, 39 F.Supp 2d 317 (D.C.N.Y. 1999) (magistrate judge's recommendation that defendant's motion for leave to amend a pleading be denied as futile would be reviewed *de novo* because denial of leave to amend was dispositive).

agreement included a comprehensive waiver of the class plaintiffs' known and unknown FLSA claims. Further, Booth and Evans signed a FLSA claim form and release which included a broad waiver of claims. The question before the undersigned is whether these waiver provisions can serve to bar the retaliatory discharge claims in this action (the Tennessee Action) which was pending at the time the Indiana Action was settled when plaintiffs' counsel in the Tennessee action were not consulted about settlement of their clients' retaliatory discharge claims. The undersigned concludes it cannot because to do so would violate Tennessee Rules of Professional Conduct 4.2 and therefore I RECOMMEND Professional Transportation's motion to amend its answer be DENIED.[2]

## II. Relevant Facts

On August 10, 2011, a group of plaintiffs filed the Indiana Action alleging Professional Transportation improperly failed to pay its over-the-road drivers overtime and minimum wages due under the FLSA. Eventually, the group of plaintiffs included a class of approximately 3,033 drivers. The drivers were represented by Kansas based attorneys Joseph H. Cassell and Terry D. Smith (drivers' Class Counsel). Linda Cooley of the law firm of Kreig DeVault in Indianapolis,

---

[2] Plaintiffs have also raised a number of other bases upon which they argue the motion to amend should not be allowed including: (1) the motion to amend the answer was not timely, (2) by its express terms, the waiver is not effective because they have not accepted benefits under the Settlement Agreement, (3) by its express terms, the waiver applies only to claims which could have been joined to the Indiana Action and plaintiffs' retaliatory discharge claims could not have been joined, (4) the District Judge who approved the FLSA Settlement Agreement was not apprised of plaintiffs' pending retaliatory discharge claims, thus the Settlement Agreement is ineffective as to those claims, and (5) when considering the language of the Settlement Agreement, the Opt-In Form, and the Release Forms as a whole, the waiver provision is ambiguous, and it was never the intent of the parties to settle or waive plaintiffs' retaliatory discharge claims. However, it is unnecessary for the undersigned to address these arguments since I find the motion to amend the answer should be denied on other grounds.

Indiana represented Professional Transportation in the Indiana Action. In February of 2012, both plaintiff Booth and plaintiff Evans signed "Consent to Opt In" forms for the Indiana Action. Each "Consent to Opt In" stated that the signer "agree[d] to be bound by any collective action settlement herein approved by my attorneys [drivers' Class Counsel] and approved by the Court." The "Legal Notice" for the Consent to Opt-In form described the lawsuit as one alleging Professional Transportation's failure "to pay overtime and minimum wages to drivers in the manner required by the Fair Labor Standards Act…." (Legal Notice, Page ID # 1029). On March 1, 2012, the plaintiffs' Consent to Opt In forms were filed with the Southern District of Indiana.

On April 2, 2012, thirty-two days after Evans and Booth filed their opt-in forms, Professional Transportation terminated their employment. The plaintiffs contend that Professional Transportation terminated their employment because they joined the Indiana Action, and thus on June 22, 2012, they filed this lawsuit, the Tennessee Action, seeking recovery under the anti-retaliation provisions of the FLSA. Plaintiffs are represented by Attorneys Donna Mikel and Doug Hamill of the law firm Burnett, Dobson and Pinchak. Professional Transportation was again represented by the same Linda Cooley of the Indiana Action until March 18, 2013, when Cooley withdrew from her representation in this action and attorneys Rosemarie L. Hill and Justin L. Furrow of Chambliss, Bahner & Stophel, P.C., (Professional Transportation's Tennessee Counsel) entered their appearance on behalf of Professional Transportation in the Tennessee Action.

On September 26, 2013, the parties in the Indiana Action filed a Joint Motion for Court Approval of Confidential FLSA Settlement Agreement and Release. All parties in this lawsuit, the Tennessee Action, take the position that during the negotiations for the Confidential FLSA

3

Settlement Agreement and Release (Settlement Agreement) of the Indiana Action, their respective counsel had no discussions with each other or with Booth and Evans about the Tennessee Action.

The Settlement Agreement includes two paragraphs which are of particular interest to this motion. Section II of the Settlement Agreement provides in relevant part:

> DISMISSAL OF LITIGATION WITH PREJUDICE: The Parties agree that the Litigation and all Claims asserted therein may and should be dismissed by the Court with prejudice as set forth in Section II of this FLSA Settlement Agreement. The Plaintiffs agree that any other claims they might have under the FLSA….as of the Effective Date constitute claims that were or could have been filed in [the Matthews] Litigation for purposes of claim or issue preclusion and accordingly acknowledge that any such additional claims or requests for relief would, upon the Court's entry of dismissal with prejudice as contemplated by this Agreement, be barred by claim or issue preclusion; provided, however, that any claim or issue preclusion with respect to the Rule 23 Claims shall be governed by the terms of the separate Rule 23 Settlement Agreement.

(Agreement at 6-7, Page ID # 900-901).[3]

Section V of the Settlement Agreement provides in relevant part:

> RELEASE: In exchange for the consideration set forth in Section IV of this Agreement and other sufficient and valuable consideration, the receipt of which is hereby acknowledged, the FLSA Named Plaintiffs and Eligible Opt-In Plaintiffs, on their own behalf and on behalf of each and all past, present, and future direct and indirect spouses, domestic partners, descendants, successors, natural or legal heirs, beneficiaries, assigns, attorneys, agents, executors, administrators, trustees, and anyone else claiming through the FLSA Named Plaintiffs or Eligible Opt-In Plaintiffs (collectively, "Releasing Parties"), hereby release and forever discharge PTI, and each and all of PTI's past, present, and future direct and indirect predecessors, successors, assigns, subsidiaries, parent corporations, partners, affiliates, organizations, and divisions, and each and all of their respective direct and indirect officers, directors, employees, attorneys, agents, insurers, accountants, shareholders, owners, partners, trustees, fiduciaries, and representatives (collectively, "Released Parties") from any and all past, present, or future claims, causes of action, suits, debts, accounts, contracts, demands, agreements, controversies, judgments, obligations, damages, costs, fees, expenses, and liabilities of any nature whatsoever, whether or not now known, suspected, or claimed, and whether arising under federal or state wage and hour laws, which the Releasing Parties had, now

---

[3] The Page ID # is the number assigned to each page filed in CM/ECF. It can be found on the bottom right of each page.

have, or hereafter may have, or claim to have, against PTI and/or any Released Party by reason of any act, transaction, policy, practice, conduct, or omission of any kind whatsoever arising out of, relating to, or based upon, in whole or in part, the payment of wages or hours of work for PTI drivers prior to and including the date on which the Court approves the Parties' settlement, including but not limited to the allegations made in the Litigation and the FLSA Claims; provided, however, the scope of this release shall not extend to the Parties' respective obligations under this FLSA Settlement Agreement, and further provided that the full and final release of the Rule 23 Claims shall be governed by the terms of the separate Rule 23 Settlement Agreement.

(Agreement at 17-18, Page ID # 911-912).

One plaintiff out of the approximately 3,033 plaintiffs in the Indiana Action had retaliation claims specifically excluded from the release provisions of the Agreement:

Also provided, however, that a special FLSA Settlement Release Form shall be prepared for Eligible Opt-In Plaintiff [John Doe], to include the following language: "The foregoing release shall exclude a claim for alleged retaliatory discharge based upon the termination of my employment on July 12, 2013."

(Agreement at 17, n. 1; Page ID # 911) (John Doe substituted for named plaintiff). On October 7, 2013, the United States District Court for the Southern District of Indiana approved the Agreement and the parties' settlement of the FLSA claims in the Indiana Action.

In October 2013, plaintiffs Booth and Evans each completed and returned the FLSA Claim Form And Release which provides in relevant part,

By completing this form and accepting benefits under the FLSA Settlement of this action, I…. do hereby release Defendants… for all claims, debts, losses, demands, obligations, liabilities, penalties, causes of action, charges, grievances, complaints, or suits of any type or nature, known and/or unknown, suspected and/or unsuspected, which related to [their] employment and/or contractual relationship with [Professional Transportation]… and any other claims whatsoever alleged in the Lawsuits and all claims relating to [their] employment status and/or contractual relationship with [Professional Transportation] which could have been alleged in this case.

(FLSA Claim Form And Release at 2, Page ID # 923) (emphasis added). For purposes of this discussion, the undersigned shall refer to Sections II and V of the Settlement Agreement and to

5

the release paragraph in the FLSA Claim Form And Release collectively as "the Waiver Provisions."

The deadline to amend pleadings in this case expired on October 2013. On December 17, 2013, the discovery period in this lawsuit closed. The deadline to file dispositive motions was January 14, 2014. According to Professional Transportation, the Settlement Agreement became effective by its terms on February 19, 2014, the date on which United States District Court for the Southern District of Indiana entered an order dismissing with prejudice the Indiana Action.

On February 19, 2014, upon learning of the dismissal of the Indiana Action and that the Settlement Agreement had become effective, Professional Transportation's Tennessee Counsel contacted plaintiffs' Tennessee Counsel to contend that plaintiffs' claims in this lawsuit have been released and are barred by virtue of the plaintiffs' agreement to the Settlement Agreement in the Indiana Action. This was the first time plaintiffs' Tennessee Counsel was notified of the alleged waiver of plaintiffs' retaliatory discharge claims. As of February 19, 2014, no funds had been sent to Evans or Booth as part of the Indiana Action Settlement Agreement, and plaintiffs' Tennessee Counsel has notified Professional Transportation's counsel that Evans and Booth will not accept payment.

On March 11, 2013, Professional Transportation filed this motion for leave to amend its answer to include the affirmative defenses of accord and satisfaction, res judicata, and waiver based on the aforementioned Waiver Provisions.

### III. Analysis

Under Rule 15(a), leave to amend shall be granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend remains within the sound discretion of the trial court. *Leary v.*

6

*Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave is appropriate "in absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment, etc..." *Leary*, 349 F.3d at 905 (6th Cir. 2003) (quoting *Foman*, 371 U.S. at 182); *see also Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) ("leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" (citing *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir.1995)).

The Court must also consider the plaintiff's motion in light of Fed. R. Civ. P. 16(b). *Leary*, 349 F.3d at 909. Rule 16 permits modification of the scheduling order upon a showing of good cause and by leave of the district judge. *Leary*, 349 F.3d at 906; *Gardner v. Wayne County*, 2007 WL 2325065 *2 (E.D. Mich. Aug. 15, 2007); *Kaylor v. Radde*, 2005 WL 282851 * 2 (N.D. Ohio Mar. 4, 2005).

> *The Motion to Amend is Made in Bad Faith Because Application of the Waiver Provisions to Plaintiffs' Retaliatory Discharge Action Violates Tennessee Rule of Professional Conduct 4.2*

The Tennessee Rules of Professional Conduct govern the conduct of lawyers who practice before this Court. E.D. Tenn. L.R. 83.6. Tennessee Rule of Professional Conduct 4.2 states, "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Tenn. Sup. Ct. R. 8, RPC 4.2. Rule 4.2 "contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those

7

lawyers with the client-lawyer relationship, and the uncounseled disclosure of information relating to the representation." Tenn. Sup. Ct. R. 8, RPC 4.2, Comment 1. Rule 4.2 applies even if "the represented person initiates or consents to the communication." Tenn. Sup. Ct. R. 8, RPC 4.2, Comment 2. Further, "[a] lawyer may not make a communication prohibited by this Rule through the acts of another." Tenn. Sup. Ct. R. 8, RPC 4.2, Comment 4. Indiana's Rules of Professional Conduct, Rule 4.2, including the comments, is exactly the same as that of Tennessee. *See* IND. RULES OF PROF'L CONDUCT R. 4.2.

Plaintiffs' Tennessee Counsel, Mikel and Hamill, were not involved in the Indiana Action, which concerned solely wage and hour claims; they state they were not consulted by anyone concerning the Settlement Agreement in the Indiana Action and they gave no-one permission to negotiate a settlement of their clients' retaliatory discharge claims pending in the Tennessee Action. It is plaintiffs' position that attempting now to apply Waiver Provisions to their retaliatory discharge claims in the instant case violates Rule 4.2 since they were represented in their retaliatory discharge claims by attorneys Mikel and Hamill at the time the Settlement Agreement and the Waiver Provisions in the wage and hour case, the Indiana Action, was negotiated.

Professional Transportation's Tennessee Counsel asserts the Settlement Agreement and Waiver Provisions were negotiated by Professional Transportation's Indiana Counsel and the drivers' Class Counsel and that the language of the Waiver Provisions is plain and unambiguous – all plaintiffs' claims arising from their employment with Professional Transportation are waived, including the Tennessee Action. Professional Transportation dismisses any assertions of an ethical violation by stating that neither their Indiana Counsel nor their Tennessee Counsel communicated with Booth or Evans. They argue they personally have clean hands, and,

8

therefore, the protections of Rule 4.2 do not apply and the Waiver Provisions bar the Tennessee Action.

Such reasoning ignores the purpose of Rule 4.2: the Rule is intended to protect the represented client from overreaching by opposing counsel because the client has not had the benefit of advice from the attorney he has already hired to represent him in that particular matter. While Professional Transportation's Indiana Counsel admits she had no communications with the drivers' Class Counsel regarding Evans' and Booth's retaliatory discharge claims, (Cooley Aff. ¶ 10, Page ID # 1090), Professional Transportation is attempting to apply the Waiver Provisions to Booth's and Evans' Tennessee Action by virtue of the drivers' Class Counsel's participation generally in negotiations for the Settlement Agreement in the Indiana Action. As Comment 4 to Rule 4.2 states, "[a] lawyer may not make a communication prohibited by this Rule through the acts of another."

Furthermore, the drivers' Class Counsel contends he did not communicate with Booth and Evans regarding their retaliatory discharge claims, he did not represent them in regard to their retaliatory discharge claims, and the parties to the Indiana Action never discussed settlement of the plaintiffs' Tennessee Action. (Cassell Aff. ¶¶ 11 -13, Page ID # 1032-33). As a practical matter, if the Settlement Agreement and the Waiver Provisions were deemed to encompass Booth's and Evans' retaliatory discharge claims, then that means, in effect, *someone* had to communicate with Booth and Evans about their Tennessee Action or act on their behalf concerning it, and it is undisputed that that someone was not Mikel or Hamill -- hence, the violation of Rule 4.2.

Professional Transportation argues Booth and Evans could have negotiated an exclusion of the Tennessee Action from the Waiver Provisions like John Doe did; however, this argument

9

begs the question: who would have negotiated that exclusion for them? Neither Booth nor Evans were acting *pro se* and all the attorneys involved in the Indiana Action assert they had no communications whatsoever with Booth and Evans on the subject of their retaliatory discharge claims brought in the Tennessee Action. This conundrum illustrates the problems Rule 4.2 seeks to avoid.

Finally, Professional Transportation argues that even if there was a violation of Rule 4.2, refusing to enforce the Waiver Provisions is not the appropriate remedy. In support of this argument, Professional Transportation refers to *Larry James Oldsmobile-Pontiac-GMC Truck Co., Inc. v. General Motors Corporation*, 175 F.R.D. 234 (N.D. Miss. 1997) and *Blanchard v. Edgemark Financial Corporation*, 1998 WL 988958 (N.D. Ill Sept. 11, 1980) which plaintiffs had cited in support of their argument that Rule 4.2 applies to the instant case.

In *Larry James*, an automobile dealership (the Dealership) was chosen to be the named representative of a class of automobile dealerships (the Class) bringing various federal claims in a class action against General Motors (GM). The Class was represented by class counsel in the class action; however, the Dealership was also represented by its own corporate counsel (Corporate Counsel) in matters with GM that did not include the federal claims brought in the class action. Nevertheless, without obtaining consent from class counsel, GM and the Dealership's corporate counsel negotiated a settlement for all matters for the Dealership including the federal claims brought in the class action. The settlement agreement included a release and stipulation of dismissal for the Dealership's individual federal claims brought in the class action. The court found that GM's attorney had violated Mississippi Rule of Professional Conduct 4.2, which mirrors Tennessee's Rule 4.2, because he knew the Dealership was represented by class counsel on the federal claims and still he negotiated with the Dealership's

10

corporate counsel to settle, release, and dismiss the Dealership's individual federal claims. *Id.* at 241-42. The court held GM's attorney had violated Rule 4.2 even though GM's attorney had not communicated directly with the Dealership, instead communicating with the Dealership's corporate counsel. *Id.* at 245. The *Larry James* court reasoned GM's attorney knew the Dealership was represented by class counsel on the federal claims, and "an attorney may not do through a third person what he may not do himself." *Id.*

Despite the ethical violation, the *Larry James* court did not set aside the settlement agreement and its release and dismissal of the Dealership's federal claims. The undersigned first notes that neither the Dealership nor GM asked that the settlement agreement with its attendant releases and dismissal of the federal claims be set aside; instead, the court reviewed the agreement as part of its duties under Fed. R. Civ. P. 23 since the Dealership was the named representative of the class in pending class action. After conducting an evidentiary hearing, the court concluded it would approve the settlement agreement in its entirety between the Dealership and GM because "the remaining class members' rights have not been unfairly prejudiced as a result of the releases [of the federal claims] and the dismissal [of the federal claims]" and because the Dealership "did not receive a premium for the settlement of [the Dealership's] individual claims because of any leverage provided by the class action." *Id.* at 238.

The undersigned does not find that *Larry James* supports Professional Transportation's position that the Waiver Provisions, assuming they apply to the Tennessee Action, should not be set aside. The *Larry James* court declined to set aside the settlement agreement and releases at issue in that case because it found no party suffered unfair prejudice as a result of the ethical violation. As discussed at length, that is not the case here. If the Waiver Provisions apply, Booth and Evans will suffer significant prejudice. They were completely uncounseled when they

11

signed the Settlement Agreement and Waiver Provisions even though they had very capable attorneys to represent them in this matter. Professional Transportation's Indiana Counsel knew Booth and Evans were represented by Mikel and Hamill in the Tennessee Action, yet she did not receive consent from them to negotiate a settlement for their retaliatory discharge claims.

It is no excuse that negotiations in the Indiana Action were conducted with the drivers' Class Counsel, as Professional Transportation suggests. Professional Transportation argues that in *Larry James*, the court took umbrage that GM's attorney did not negotiate with the Dealership's class counsel whereas in this case, Professional Transportation's Indiana Counsel did negotiate with the drivers' Class Counsel. This argument misses the point of Rule 4.2. Counsel who represents a class of plaintiffs is not automatically imbued with authority to represent a member of the class on matters separate from the class action and for which the member has engaged another attorney. The *Larry James* court found a violation of Rule 4.2 had occurred because the GM attorney had negotiated a settlement of the Dealership's *class* action claims without the Dealership's *class* counsel. The point is to pair the correct counsel with the corresponding matter. In this case, the problem is that Professional Transportation's Indiana Counsel negotiated (allegedly) a settlement of the Tennessee Action without the Tennessee Counsel. This conduct is a violation of Rule 4.2, and the plaintiffs have suffered unfair prejudice because they (allegedly) entered into a settlement which waives their Tennessee Action without any advice of counsel as to the effect of the Settlement Agreement.

*Blanchard v. Edgemark Financial Corporation*, 1998 WL 988958 (N.D. Ill. Sept. 11, 1998) is very similar to *Larry James*. In *Blanchard*, plaintiff Beale was the named representative of the plaintiff class suing defendants. Beale was represented by class counsel in the class action, but Beale also had another lawsuit with different counsel pending outside the

12

class action against the same defendants. Nevertheless, defendants' counsel negotiated settlements with Beale's non-class attorney of all Beale's claims, including Beale's class claims. Beale's class counsel was not involved in the settlement nor had he given his consent for Beale's non-class counsel to negotiate a settlement of Beale's class claims. The settlement included a release of Beale's class claims against the defendants. The *Blanchard* court found defendants' counsel violated Illinois Rule of Professional Conduct 4.2, which mirrors Tennessee's Rule 4.2, even though defendants' counsel did not communicate directly with Beale regarding his class claims. *Id.* at *7. As reasoned by the *Blanchard* court, "[t]his court cannot permit an attorney to do indirectly through a third person what he cannot do directly under the Illinois Code of Professional Conduct." *Id.* The *Blanchard* court also rejected defendants' argument that Beale's non-class counsel was capable of representing the interests of Beale's class claims because the non-class counsel was not familiar with Beale's class claims. *Id.* at 8. As in *Larry James*, none of the *Blanchard* parties to the settlement agreement at issue requested that it be set aside.

Despite the Rule 4.2 violation, the *Blanchard* court declined to set aside the settlement agreement at issue "because the settlement has been executed and may not now be undone," *id.* at *11, but the court granted sanctions including disqualifying defendants' attorney from representing defendants in the remaining class action, ordering defendants to pay to the remaining class plaintiffs reasonable attorney's fees and costs associated with their motion to set aside the settlement agreement, and ordering that any facts that would have been admissible if Beale's claims had not been released remain admissible in the class action. *Id.* at 12.

To the extent that *Larry James* and *Blanchard* support an argument that settlement agreements negotiated in violation of Rule 4.2 should not always be set aside, these cases can be distinguished from the instant one on several important bases: First, it is not too late to decline

13

to apply the Waiver Provisions to this case. The court can simply deny the motion to amend. This causes no prejudice to Professional Transportation which can still vigorously defend this action on the merits. Second, plaintiffs do not seek to set aside the entire Settlement Agreement, only the Waiver Provisions. Third, refusing to set aside the Waiver Provisions in this case would cause far greater harm here than refusing to set aside the settlement agreements and releases in *Larry James* and *Blanchard*. In the latter cases, none of the parties to the settlement agreements at issue requested the settlement agreements and releases be set aside and the remaining class plaintiffs still had their class claims to pursue. Here, two parties to the Settlement Agreement are requesting the Waiver Provisions be set aside as to their individual retaliatory discharge claims only, and, if the Court were to apply the Waiver Provisions to the Tennessee Action despite the clear Rule 4.2 violation, plaintiffs' entire retaliatory discharge action would be barred and plaintiffs would lose any opportunity to have these claims addressed.

For all the reasons discussed, the undersigned concludes that to the extent the Settlement Agreement and Waiver Provisions in the Indiana Action apply to plaintiffs' Tennessee Action, the negotiations for the Settlement Agreement and Waiver Provisions violated Rule 4.2 and were therefore not undertaken in good faith, and, concomitantly, the motion to amend the answer in this case to include the affirmative defenses of waiver, accord and satisfaction, and res judicata to bar this action is also not made in good faith. Accordingly, it is RECOMMENDED[4] Professional Transportation's motion to amend its answer (Doc. 31) be DENIED.

S /*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file of objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 149, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).